# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 4:18-cv-382** |
| **v.** | § | |
| | § | |
| **ACE AMERICAN INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## ACE AMERICAN INSURANCE COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF STEPHEN E. WALRAVEN AND BRIEF IN SUPPORT THEREOF

James H. Moody, III
Bar No. 14307400
S.D. Bar No. 17723

QUILLING, SELANDER, LOWNDS,
   WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
hmoody@qslwm.com

**ATTORNEY FOR ACE AMERICAN INSURANCE COMPANY**

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................. i

INDEX OF AUTHORITIES........................................................................................................ ii

I.     NATURE AND STAGE OF PROCEEDING .................................................... 1

II.    The ISSUE IN A STOWERS CASE ................................................................... 2

III.   STANDARD APPLICABLE TO EXPERT TESTIMONY ............................. 3

IV.   ISSUES TO BE RULED ON................................................................................. 5

V.    SUPPORTING EVIDENCE.................................................................................. 6

VI.   SUMMARY OF ARGUMENT ............................................................................. 6

VII.  ARGUMENT AND AUTHORITIES .................................................................. 8

     A. Walraven's Testimony Should be Excluded Because His Opinions
        are not Relevant. ........................................................................................... 8

        1.  Walraven's testimony should be excluded because it will not assist the
             trier of fact to determine a fact in issue................................................ 8

        2.  Walraven's testimony should be excluded because it invades both the
             province of the court and the jury. ...................................................... 11

     B. Walraven's Testimony Should be Excluded Because All We Have is Walraven's
        Credentials and His Subjective Opinion That "It Is So," Neither of Which Make
        Walraven's Testimony Reliable................................................................... 16

     C. Walraven's Testimony Should be Excluded Because He Does Not Possess the
        Minimum Level of Expertise Required to Make his Relevant Opinions, if any, of
        Assistance to the Trier of Fact in This Case. ............................................. 18

CERTIFICATE OF CONFERENCE........................................................................................ 22

CERTIFICATE OF SERVICE .................................................................................................. 22

## <u>INDEX OF AUTHORITIES</u>

Cases

*Am. Physicians Ins. Exch. v. Garcia,*
   876 S.W.2d 842, 849 (Tex. 1994) ........................................................................... 2

*Askanase v. Fatjo,*
   130 F.3d 657, 673 (5th Cir.1997) ............................................................... 11, 12, 15

*Birmingham Fire Ins. Co. of Pennsylvania v. Am. Nat. Fire Ins. Co.*,
   947 S.W.2d 592, 597 (Tex. App. – Texarkana 1997, writ denied) ........................... 2

*Black v. Food Lion,*
   171 F.3d 308, 311–12 (5th Cir.1999) ................................................................... 16

*Broders v. Heise,*
   924 S.W.2d 148, 152 (Tex. 1996) (emphasis added) ........................................ 4, 18

*Christophersen v. Allied–Signal Corp.,*
   939 F.2d 1106, 1112–1113 (5th Cir.1991) ......................................................... 4, 19

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.,*
   2007 WL 2403656, at *7 (N.D. Tex. 2007) ........................................................... 2

*Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.,*
   2013 WL 1752405, at *3 (S.D. Tex. 2013) ................................................... 8, 9, 18

*Crow v. United Ben. Life Ins. Co.,*
   2001 WL 285231 (N.D. Tex. 2001) .................................................................. 15, 16

*Curtis v. M&S Petroleum, Inc.,*
   174 F.3d 661, 668 (5th Cir. 1999) ..................................................................... 5, 16

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579, 591–92, 113 S. Ct. 2786, 2795–96, 125 L. Ed. 2d 469 (1993) ........ 4, 5, 8, 16, 18

*Estate of Sowell v. United States,*
   198 F.3d 169, 171 (5th Cir. 1999) ..................................................................... 14, 15

*Ford v. Cimarron Ins. Co., Inc.,*
   230 F.3d 828, 831-832 (5th Cir. 2000) ................................................................... 2

*Gammill v. Jack Williams Chevrolet, Inc.,*
   972 S.W.2d 713, 718-19 (Tex. 1998) ................................................................. 4, 18

*Goodman v. Harris County,*
   571 F.3d 388, 399 (5th Cir. 2009) ......................................................................... 9

*Gulf Ins. Co. v. Jones,*
   2003 WL 22208551, *3 (N.D. Tex. 2003) ............................................................ 3

*Hathaway v. Bazany,*
   507 F.3d 312, 317-18 (5th Cir. 2007)) .............................................................. 5, 16

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137, 152 (1999) .......................................................................... 4, 5, 16, 18

*Methodist Hosp. v. Zurich Am. Ins. Co.*,
    329 S.W.3d 510 (Tex. Ct. App.—Houston [14th Dist.] 2009, pet. denied) ................................ 3

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*,
    236 S.W.3d 765, 776 (Tex. 2007) ............................................................................................. 2

*Nunn v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 2540754, at *2 (N.D. Tex. 2010) .............................................................................. 3

*Owen v. Kerr-McGee Corp.*,
    698 F.2d 236, 240 (5th Cir. 1983) (emphasis added) ............................................................... 5

*Roussell v. Brinker Int'l, Inc.*,
    2008 WL 2714079, at *26 (S.D. Tex. 2008) (Ellison, K.P.) ............................................. 5, 16

*Samuel v. Toyota Motor Corp.*,
    2015 WL 10960956, at *5 (W.D. Tex. 2015) ..................................................................... 3, 18

*Specht v. Jensen*,
    853 F.2d 805, 807 (10th Cir. 1988) ....................................................................................... 11

*United States v. Clark*,
    2010 WL 2710569 (E.D. Tex. July 7, 2010) ......................................................................... 11

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420, 424 (5th Cir.1987) .......................................................................................... 16

*Wilson v. Woods*,
    163 F.3d 935, 938 (5th Cir. 1999) ........................................................................................... 4

## Rules

Fed. R. Civ. Proc. 26(a)(2)(B) ....................................................................................................... 6

Fed. R. Evid. 403 ......................................................................................................................... 11

Fed. R. Evid. 702 ................................................................................................................. 3, 4, 6, 8

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AMERICAN GUARANTEE AND** | § | |
| **LIABILITY INSURANCE COMPANY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:18-cv-382** |
| | § | |
| **ACE AMERICAN INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**ACE AMERICAN INSURANCE COMPANY'S MOTION TO EXCLUDE THE
TESTIMONY OF STEPHEN E. WALRAVEN AND BRIEF IN SUPPORT THEREOF**

TO THE HONORABLE KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE:

COMES NOW, ACE American Insurance Company ("ACE"), Defendant in the above-styled and numbered cause, and files this its Motion to Exclude the Testimony of Stephen E. Walraven, and for such would show unto the Court as follows:

**I.**

**NATURE AND STAGE OF PROCEEDING**

Plaintiff, American Guaranty and Liability Insurance Company ("AGLIC"), commenced this action against ACE on February 9, 2018, asserting two causes of action. [Doc. 1]. One of those causes of action is what is commonly referred to as a "*Stowers*" action. Through that action, AGLIC, as the excess insurer for, and the equitable subrogee of The Brickman Group, Ltd., LLC ("Brickman"), seeks damages based on allegations that ACE, as Brickman's primary insurer, was negligent in failing to settle the claims asserted against Brickman in Cause No. 2015-38679, styled *Michelle Lynn Braswell, et. al. v. The Brickman Group Limited, LLC, et. al,* in the 127th Judicial

District Court of Harris County, Texas (the "Underlying Action"). In an effort to meet its burden of proof on this claim, AGLIC designated Stephen E. Walraven ("Walraven") as a testifying expert. ACE is now seeking an order to the effect that Walraven's testimony should be excluded in whole, or in part.

## II.

## THE ISSUE IN A STOWERS CASE

"Texas law does not recognize an equitable subrogation action by excess carriers against a primary carrier for negligent handling of the defense or settlement negotiations." *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 2007 WL 2403656, at *7 (N.D. Tex. 2007). Rather, Texas law "recognizes only one tort duty in this context, and that is the *Stowers* duty to accept reasonable settlement demands within policy limits." *Id.*; *see also, Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.2d 765, 776 (Tex. 2007); *Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d 828, 831-832 (5th Cir. 2000).  Thus:

> [i]n the context of a *Stowers* lawsuit, evidence concerning claims investigation, trial defense, and conduct during settlement negotiations is necessarily subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the circumstances, such that an ordinarily prudent insurer would accept it.

*Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). In fact, it has been recognized that:

> [a]fter *American Physicians,* the focus in a *Stowers* lawsuit is solely on the reasonableness of the claimant's offer.

*Birmingham Fire Ins. Co. of Pennsylvania v. Am. Nat. Fire Ins. Co.*, 947 S.W.2d 592, 597 (Tex. App. – Texarkana 1997, writ denied) (emphasis added); *see also, Gulf Ins. Co. v. Jones*, 2003 WL

22208551, *3 (N.D. Tex. 2003).[1]

Thus, where, as here, it is undisputed that opportunities to settle were rejected, the evidence at trial should be limited to how an ordinarily prudent carrier would have responded to those opportunities, not the perceived deficiencies in the rejecting carrier's settlement evaluation process. Stated otherwise, because a carrier can make the right decision for arguably the wrong reasons, a *Stowers* case is only about whether the right decision was made, not the methodology utilized to make that decision.[2]

## III.

## STANDARD APPLICABLE TO EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence provides that if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Thus, to be admissible under Rule 702, an expert's testimony must be **qualified, relevant** and **reliable.** *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. 2010).

To be **qualified,** an expert must possess special knowledge, and true expertise about the matter on which he offers an opinion. *Samuel v. Toyota Motor Corp.,* 2015 WL 10960956, at *5 (W.D. Tex. 2015), citing *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718-19

---

[1] In fact, when Zurich American Insurance Company, one of AGLIC's sister companies, has been the target of "negligent claims handling" claims, it has successfully taken advantage of the fact that Texas law does not recognize a cause of action in negligence by an insured against an insurer except in the *Stowers* context. *See, Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510 (Tex. Ct. App.—Houston [14th Dist.] 2009, pet. denied) and Zurich's Appellate Brief therein, 2008 WL 1710771 at *17.

[2] For example, even if, for purposes of argument, it is assumed that the value placed on the Underlying Action by ACE was unreasonably low, ACE's decision to reject a demand would still be justified if the demand was, in fact, unreasonable. Thus, testimony concerning perceived deficiencies in ACE's claims evaluation process will not assist the trier of fact in determining how an ordinarily prudent carrier would have responded to a demand.

(Tex. 1998).  An expert does not satisfy this standard simply because he has an impressive resume. *Gammill, supra,* 972 S.W.2d at 719. "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the ***specific*** issue before the court which would qualify the expert to give an opinion on that ***particular*** subject." *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996) (emphasis added); *see also, Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir. 1999) (Reputable fire investigator prevented from testifying as an accident reconstruction expert where deficiencies in the expert's experience and professional training led to the "impression that his 'expertise' in accident reconstruction was no greater than that of any other individual with a general scientific background."); *Christophersen v. Allied–Signal Corp.,* 939 F.2d 1106, 1112–1113 (5th Cir.1991), *cert. denied,* 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992) ("We caution, however, that although credentials can be significant, they alone are not necessarily determinative. The questions, for example, do not stop if the expert has an M.D. degree. That alone is not enough to qualify him to give an opinion on every conceivable medical question. This is because the inquiry must be into actual qualification— sufficient to assist the trier of fact.").

To be ***relevant***, testimony must assist the trier of fact to determine a fact in issue. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591–92, 113 S. Ct. 2786, 2795–96, 125 L. Ed. 2d 469 (1993).

> Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."

*Id.* (internal citations omitted). Moreover, although expert witnesses are given wide latitude, including the ability to offer opinions that are not based on firsthand knowledge or observation, this freedom is not limitless. *See, Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999);

*Daubert*, 509 U.S. at 592. "[A]llowing an expert to give his opinion on the legal conclusion[s] to be drawn from the evidence both invades the court's province and is <u>irrelevant.</u>" *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (emphasis added).

To be *reliable,* an expert's testimony must be grounded in the methods and procedures of the science or discipline on which the expert relies for his opinions. *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir. 1999). An expert's testimony is unreliable if it based on no more than "unsupported speculation or subjective belief." *Id.* Furthermore, even if a witness is generally qualified to testify as an expert, the court may decline to admit his opinion testimony if it is "'connected to existing data only by the ipse dixit of the expert.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). And as this Court has previously noted:

> "the existence of sufficient facts and a reliable methodology is in all instances mandatory" . . ..

*Roussell v. Brinker Int'l, Inc.,* 2008 WL 2714079, at *26 (S.D. Tex. 2008) (Ellison, K.P.) (quoting *Hathaway v. Bazany,* 507 F.3d 312, 317-18 (5th Cir. 2007)).

### IV.

### <u>ISSUES TO BE RULED ON</u>

Whether Walraven's testimony should be excluded:

1. On the basis of relevance because it will not assist the trier of fact to determine a fact in issue, and it invades both the province of the court and the jury;

2. On the basis of reliability because Walraven's testimony is nothing more than subjective opinions and ipse dixit; and

3. On the basis of Walraven's lack of qualification, because Walraven does not possess the minimum level of expertise on the specific issue the trier of fact will be asked to decide to make his relevant opinions, if any, of assistance to the trier of fact.

## V.

## SUPPORTING EVIDENCE

ACE is filing simultaneously herewith its Appendix in Support of Motion to Exclude (hereinafter "Appendix" or "App."), which Appendix contains the following evidence:

| DESCRIPTION OF EVIDENCE | | APPENDIX PAGE NOS. |
|---|---|---|
| Tab A | Report of Stephen E. Walraven, dated November 30, 2018 | 003-014 |
| Tab B | Deposition of Stephen E. Walraven | 015-070 |

## VI.

## SUMMARY OF ARGUMENT

To be admissible under Rule 702, an expert's testimony must be ***qualified, relevant*** and ***reliable.*** Here, Walraven's testimony falls short on all three bases.

Fed. R. Civ. Proc. 26(a)(2)(B) provides that an expert's "report must contain . . . a complete statement of *all* opinions the witness will express and the basis and reasons for them." (Emphasis added). When the Court reviews Walraven's report, however, it will note that Walraven never addresses the sole issue the jury will be asked to decide, i.e., whether an ordinarily prudent insurer would have accepted the demands on which AGLIC bases its *Stowers* claim. Rather, Walraven's opinions fall into two categories: (1) opinions concerning ACE's claims handling practices that are neither actionable, nor the basis of AGLIC's Stowers claim, and (2) impermissible legal opinions. As such, Walraven's testimony should be excluded as it will not assist the trier of fact to determine whether an ordinarily prudent insurer would have accepted the demands on which AGLIC bases its *Stowers* claim.

Walraven's testimony should also be excluded because it is not ***reliable***. When reduced to its essence, Walraven's report is nothing more than a recitation of facts, legal opinions, and

conclusory statements. In particular, Walraven's report is silent on the methodology he used to develop his opinions, as well as on the methodology an ordinarily prudent insurer would use to develop the value of a wrongful death case involving weak liability facts and potentially large damages. Further, there is no explanation as to the significance Walraven or an ordinarily prudent insurer would give to the facts and case developments on which Walraven focuses, much less how Walraven or an ordinarily prudent insurer would use those facts and case developments to come up with a settlement value of $2,000,000 (ACE's policy limit), or more.  Rather, all we have is personal opinion and Walraven's ipse dixit, neither of which make Walraven's testimony *reliable*. Therefore, his testimony should be excluded on that basis.

Walraven's testimony should also be excluded because he is not *qualified* to speak to the issue of how an ordinarily prudent insurer would have responded to the demands on which AGLIC bases its *Stowers* claim. While Walraven is a respected attorney, his area of expertise is in the field of insurance coverage, not the defense and/or evaluation of wrongful death claims. In fact, Walraven admits it has been close to 30 years since he handled a wrongful death case. Thus, just as a medical doctor is unable to assist a jury on all medical issues, Walraven's law license does not make his opinions reliable on all matters legal. Therefore, Walraven's testimony should be excluded because he does not possess the minimum level of expertise on the specific issue the trier of fact will be asked to decide to make his relevant opinions, if any, of assistance to the trier of fact.

# VII.

## ARGUMENT AND AUTHORITIES

Walraven's testimony should be excluded because it fails to satisfy Rule 702's requirement that expert testimony be *qualified, relevant* and *reliable.* For purposes of clarity, ACE will address each of these issues separately below.

### A.  WALRAVEN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS OPINIONS ARE NOT RELEVANT.

#### 1.  Walraven's testimony should be excluded because it will not assist the trier of fact to determine a fact in issue.

To be *relevant*, testimony must assist the trier of fact to determine a fact in issue. *Daubert*, 509 U.S. at 591–92.  When testimony is not relevant, it should be excluded. *Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, 2013 WL 1752405, at *3 (S.D. Tex. 2013).

*Cox, supra*, is a case dealing with coverage for expenses incurred as a result of an oil spill. In ruling that the insured's expert's testimony should be excluded in part, Judge Miller explained his ruling as follows:

> Additionally, the court asks whether Stanton's testimony is reliable and "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The court finds that a portion of Stanton's opinions are not relevant because they do not assist the trier of fact. His opinions fall into two main categories: opinions on the law, and opinions on the behavior of hydrocarbons in water and the practicalities of oil spill clean-up. In the first group—his opinions regarding the law, he opines on what would have been required by law, what types of recovery would have been required or prevented by law, how the law would categorize the damage caused by the storm. He also gives an opinion on whether Cox's method of clean-up was what he, as a Federal Coordinating Officer, would have ordered. The opinions in this first group are not relevant. Under the Umbrella Policy only those amounts Cox was legally required to pay could qualify for coverage. So, a threshold question is what actions taken by Cox were required by the federal officer in charge. If Stanton had been the Coast Guard person who ordered Cox to take certain actions, then he could testify to that fact. But he was not. . . . What Stanton would theoretically have required Cox to do is not relevant

<u>because it does not make the fact of whether the clean-ups actually *were* legally required any more or less true.</u> And, his opinions on the law are improper because they invade the purview of the court. *Goodman,* 571 F.3d at 399 ("[A]n expert may never render conclusions of law."). Therefore, any opinions he has regarding the statutes, the rules, and their requirements is excluded.

*Cox, supra,* at *3 (footnote and docket references omitted) (emphasis (<u>underlining</u>) added).

Here, if AGLIC's *Stowers* claim is not resolved in ACE's favor as a matter of law, the trier of fact will need to determine whether an ordinarily prudent insurer would have accepted any of the demands on which AGLIC bases its *Stowers* claim. Thus, applying Judge Miller's logic to the instant facts, testimony concerning perceived deficiencies in ACE's settlement evaluation process should be excluded because such testimony does not make the fact that an ordinarily prudent insurer would have accepted one or more of the rejected demands any more or less true.[3]

Despite this, the majority of Walraven's report focuses on ACE's conduct in a clear attempt to convince the jury that ACE acted negligently in its handling of the Underlying Action. The first sentence of Walraven's report admits as much by stating that he was retained to provide his opinions and conclusions regarding ACE "in connection with handling the defense of the underlying lawsuit, in particular relating to its evaluation of exposure and its response to settlement demands."[4]

The "Opinions and Analysis" section of Walraven's report is no different. In that section, Walraven makes clear that he intends to offer the opinion that "ACE's *evaluation* in responding to settlement was deficient."[5] The numbered paragraphs that Walraven offers in support of this opinion confirm his approach.

---

[3] Because a carrier can make the right decision for arguably the wrong reasons, a *Stowers* case is only about whether the right decision was made, not the methodology utilized to make that decision.

[4] App., at p. 003.

[5] App., at p. 007 (Emphasis added).

In paragraph 1, for example, Walraven opines that ACE "thought only of ACE, and the ACE policy limits, completely ignoring ACE's responsibilities to the other stake holders (sic)."[6] In paragraph 2, Walraven opines that ACE never "attempted to process new information as it came in" or "change its overall evaluation" during the handling of the claim.[7]  In paragraph 3, Walraven opines that ACE "should have considered" various evidentiary considerations in its evaluation.[8] In paragraph 4, Walraven opines that "ACE appears to have been mistaken" on an element of damages in "reaching its evaluation, significantly under valuing the case."[9]  Similarly, in paragraph 5, Walraven opines that "ACE never re-evaluated, and never recognized its responsibilities to re-evaluate and settle the case."[10]

Walraven's "Conclusion" further confirms that he intends to testify about ACE's conduct, as opposed to the reasonableness of any settlement offer.  Walraven states that "ACE had a responsibility to evaluate the exposure presented by the entire case,"[11] and that "ACE never attempted to take the first step, in evaluating the entire case."[12]  Furthermore, Walraven states that "ACE never considered the interests of its policy holder (sic) or the excess carriers, instead only considering its own self-interests,"[13] and that "ACE should have been constantly reviewing and

---

[6] *Id.*

[7] App., at pp. 007-008.

[8] App., at p. 008.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] App., at pp. 008-009.

re-evaluating the case for settlement."[14]

In short, none of the "opinions" outlined above speak to the reasonableness of the demands ACE rejected, or how an ordinarily prudent insurer would have responded to them. Even if Walraven's criticisms of ACE's settlement evaluation process are fair, which is denied, proof of those deficiencies will not make the fact that an ordinarily prudent insurer would have accepted one or more of the rejected demands any more or less true. Rather, it only serves to place ACE in a bad light in hopes that that will influence the fact finder's decision. Therefore, Walraven's testimony should be excluded on the basis of *relevance*.

Furthermore, even if one were to assume, *arguendo*, that Walraven's testimony is relevant to an issue the trier of fact is going to be asked to decide, that testimony should be excluded pursuant to Rule 403 of the Federal Rules of Evidence. Walraven's report and testimony are little more than a transparent attempt to obtain a jury verdict based on alleged improper conduct, none of which is actionable, and the prejudice of such testimony clearly outweighs any purported relevance to AGLIC's *Stowers* claim.

## 2. Walraven's testimony should be excluded because it invades both the province of the court and the jury.

It is well established that Rule 704 of the Federal Rules of Evidence does not permit an expert to render conclusions of law. *United States v. Clark*, 2010 WL 2710569 (E.D. Tex. July 7, 2010). That is because "[t]here is one applicable legal rule for each dispute or issue, and only one spokesman of the law, the judge." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir.1997) (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988).

---

[14] App., at p. 009.

Allowing a lawyer to express his views on the law is not only inadmissible, it can be harmful.

> The *Specht* case involved a warrantless search. There, the plaintiff's expert witness testified that warrantless searches were unlawful, that the defendants committed a warrantless search, that the only possible exception was unavailable, and that the acts of an individual could be imputed to the accompanying officer under § 1983. *Id.* at 808. The Tenth Circuit held that such testimony was not only inadmissible but harmful. The Court stated that while experts could give their opinions on ultimate issues, our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. *Id.* at 808–09. Moreover, allowing attorneys to testify to matters of law would be harmful to the jury. *Id.* at 809. First, the jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word "expert" and once the jury hears of the attorney's experience and expertise, it might think the witness even more reliable than the judge. *Id.* Second, if an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury. *Id.*

*Askanase,* 130 F.3d at 673. Thus, even as Walraven acknowledged in his deposition ("As we've discussed those are legal conclusions and I don't think Mr. Martin or I are going to be allowed to testify to those. ..."),[15] it would be improper to allow Walraven to express legal conclusions.

Nevertheless, that's what Walraven intends to do.

> Q.  Let's look at Exhibit 164, which is your report or at least your November 30 report. In the broad spectrum what I see from your report is that you describe your understanding of the Stowers doctrine and then you look at the evidence and reach opinions as to what conduct of ACE you believe breached the duties that you understand exist under the Stowers doctrine.  Would that be a fair statement?

> A.  That's a fair generality, yeah.[16]

---

[15] App., at p. 061.

[16] App., at pp. 035-036.

***

Q.  Okay.  If we go to page two of your report, the
first section talks about the Stowers doctrine.  That
simply states your understanding of the Stowers
doctrine?

A.  That is a statement of what I believe the question
that I'm being asked to answer, yes.

Q.  You're being asked -- the question you're being
asked to answer is to compare –

A.  Is to evaluate conduct under the legal standard like
the law says you're not supposed to run red lights when
it's red.

Q.  Okay.

A.  That's a legal standard and if you do so you might
be negligent, so I'm setting out the legal standard,
yes.

Q.  And basically what you're doing is your ultimate
opinions, and we'll get to those in a little bit, is
that by doing XY&Z ACE –

A.  Violated it Stowers.

Q.  -- breached a duty required by the Stowers doctrine?

A.  Yes.

Q.  Okay.  And that in essence without me having to go
through opinion by opinion when I get to your conclusions
that's basically what you're doing?

A.  Yes.[17]

And as if Walraven's testimony leaves any doubt as to whether he intends to express legal

conclusions, the Court need only look to Walraven's report to see that that is exactly what he did.

---

[17] App., at pp. 037-038.

For example, the section of Walraven's report titled "The Stowers Doctrine" is nothing more than a series of legal opinions and conclusions.

> Ace was responsible for accepting settlement demands, when it is reasonably prudent to do so on behalf of all concerned.  To fulfill that responsibility, ACE must gather the appropriate information, and obtain sufficient understanding of the case to recognize when such acceptance is the reasonably prudent decision.  In this matter, ACE breached that obligation with respect to the underlying lawsuit, proximately causing American Guarantee Insurance Company's damages.[18]

Similarly, in the first numbered paragraph of the "Opinions and Analysis" section of Walraven's report, Walraven opines that certain conduct "was a clear violation of [ACE's] responsibilities under the Stowers Doctrine."[19]  And in the "Conclusion" section of his report, Walraven states that ACE was "negligent,"[20] and that had "ACE acted reasonably, instead of negligently, in evaluating the case, ACE would have determined that the case should have been settled."[21]

Testimony of this exact nature has repeatedly been prohibited. For example, in *Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999), the Fifth Circuit affirmed a trial court's decision to prevent an attorney expert from testifying as to how a reasonable fiduciary would have acted under a given set of facts.

> At trial, the Estate sought to ask its expert witness, Dean Charles O. Galvin, several hypothetical questions concerning what a reasonable fiduciary would do when confronted with facts identical to those in this case. The government moved to forbid this line of questioning, arguing that it would convey to the jury a legal conclusion on the issue of "reasonable cause." The district court agreed with the government, allowing Dean Galvin to testify as to the definition and general standards of conduct of a fiduciary, but forbidding Galvin from testifying as to whether the fiduciaries in this case acted reasonably.

---

[18] App., at p. 004.

[19] App., at p. 007.

[20] App., at p. 009.

[21] *Id.*

In *Askanase v. Fatjo,* 130 F.3d 657, 669 (5th Cir.1997), we upheld the exclusion of an attorney expert who sought to testify about whether the officers and directors in the case had breached their fiduciary duties. *See Askanase,* 130 F.3d at 672–73. We held that the proposed testimony offered a legal opinion and, as such, was inadmissible. *See id.* ("Whether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for [the expert] to tell the trier of fact what to decide.").

The principles espoused in *Askanase* are equally applicable here. Dean Galvin sought to testify about what a hypothetical estate executor, faced with the identical facts as the Estate in this case, would do if acting reasonably. Whether the Estate was "acting reasonably" was, for all practical purposes, the only issue for the jury in this case to decide. Accordingly, the district court did not abuse its discretion in excluding Dean Galvin's testimony as an inadmissible legal opinion on the issue of "reasonable cause." . . .

*Estate of Sowell, supra,* 198 F.3d at 171–72.

The principles espoused in *Askanase, supra,* were applied in the context of an insurance case in *Crow v. United Ben. Life Ins. Co.*, 2001 WL 285231 (N.D. Tex. 2001). There, Judge Fish prohibited an attorney expert from expressing an opinion concerning whether an insurer breached its duty of good faith and fair dealing.

In her report, Peterson generally defines the type of insurance company conduct that constitutes a breach of the duty of good faith and fair dealing. She then identifies each of the nineteen actions taken by United Benefit in the Lillie Crow matter which, in her opinion, constituted a breach of the insurer's duty of good faith and fair dealing in this case.

In essence, Peterson's proffered opinion (1) defines the duty of good faith and fair dealing and then (2) applies the facts of the case to the law as she defines it. Peterson's proffered opinion invades both the province of the court and the jury. The first part of Peterson's proposed testimony regarding the definition of the duty of good faith and fair dealing as applied to an insurer resembles nothing so much as a jury instruction. . . . Peterson's proposed testimony defining the duty of good faith and fair dealing impermissibly intrudes upon the court's duty to instruct the jury as to the appropriate law.

It is the opinion of this court that Peterson's proposed testimony delineating particular breaches of United Benefit's duty of good faith and fair dealing impermissibly invades the province of the jury. Whether United Benefit engaged in conduct constituting a breach of the duty of good faith and fair dealing 'is an

issue for the trier of fact to decide.' 'It is not for [Peterson] to tell the trier of fact what to decide.'

*Crow, supra*, at *2-3.

The only difference between *Crow* and the present case is the duty at issue. In *Crow*, the duty of good faith and fair dealing was at issue. Here, it is the *Stowers* duty. This difference does not justify a different result. Thus, Walraven's testimony should be excluded because that testimony invades both the province of the court and the jury.

### B. WALRAVEN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE ALL WE HAVE IS WALRAVEN'S CREDENTIALS AND HIS SUBJECTIVE OPINION THAT "IT IS SO," NEITHER OF WHICH MAKE WALRAVEN'S TESTIMONY RELIABLE.

An expert's testimony is unreliable if it based on no more than "unsupported speculation or subjective belief." *Curtis v. M&S Petroleum, Inc.,* 174 F.3d at 668.   Furthermore, even if a witness is generally qualified to testify as an expert, the court may decline to admit his opinion testimony if it is "'connected to existing data only by the ipse dixit of the expert.'"   *Kumho Tire Co., Ltd.*, 526 U.S. at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).   As the Fifth Circuit has noted:

> [The Daubert] factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Daubert* are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *See Black v. Food Lion,* 171 F.3d 308, 311–12 (5th Cir.1999). **But the existence of sufficient facts and a reliable methodology is in all instances mandatory. "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."** *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 424 (5th Cir.1987).

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (emphasis (**bold type**) added); *see also, Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079, *26 (S.D. Tex. 2008) (Ellison, K.P.).

When reduced to its essence, Walraven's report is nothing more than a recitation of facts and subjective opinions based on admittedly limited relevant[22] "experience."

> Q So, as a practical matter, we're not disputing what was received and when it was received, but we are talking about how an ordinarily prudent carrier would -- what it would do with that information once it [was] received. And you've expressed your opinion that an ordinarily prudent carrier would have updated their evaluation and changed the evaluation such that the likelihood of success was less or the expected verdict range was more, or whatever your previous testimony was, correct?
>
> A.  Yeah.
>
> Q.  Now, so my question is: What's the basis of your opinion that an ordinarily prudent carrier would have made the changes that you say they should have made?
>
> A.  . . . that's based on my experience in evaluating cases.
>
> Q.  Anything else?
>
> A.  Nothing that comes to mind.[23]

Significantly, Walraven's report is silent on the methodology he used to develop his opinions, as well as on the methodology an ordinarily prudent insurer would use to develop the value of a wrongful death case involving weak liability facts and potentially large damages. Further, there is no explanation as to the significance Walraven or an ordinarily prudent insurer would give to the facts and case developments on which Walraven focuses, much less how Walraven or an ordinarily prudent insurer would use those facts and case developments to come up with a settlement value of $2,000,000 (ACE's policy limit), or more. Rather, all Walraven did

---

[22] *See*, discussion in Section C below.

[23] App., at p. 041.

was review records supplied to him by AGLIC's counsel, and then write a report full of conclusory opinions concerning alleged wrongdoing by ACE supported only by "experience."[24] Rather, all we have is Walraven's credentials and his subjective opinion that "it is so," neither of which make Walraven's testimony **reliable**. Therefore, his testimony should be excluded.

### C. WALRAVEN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HE DOES NOT POSSESS THE MINIMUM LEVEL OF EXPERTISE REQUIRED TO MAKE HIS RELEVANT OPINIONS, IF ANY, OF ASSISTANCE TO THE TRIER OF FACT IN THIS CASE.

To be **qualified,** an expert must possess special knowledge, and true expertise about the matter on which he offers an opinion. *Samuel v. Toyota Motor Corp.,* 2015 WL 10960956, at *5 (W.D. Tex. Feb. 27, 2015), citing *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718-19 (Tex. 1998). An expert does not satisfy this standard simply because he has an impressive resume. *Gammill, supra,* 972 S.W.2d at 719. "What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the ***specific*** issue before the court which would qualify the expert to give an opinion on that ***particular*** subject." *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996) (emphasis added); *see also, Christophersen v. Allied–Signal Corp.,* 939 F.2d 1106, 1112–1113 (5th

---

[24] This is significantly less that what the non-scientific expert did in *Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.,* 2013 WL 1752405, at *3 (S.D. Tex. 2013) to establish the reliability of his opinions:

> The *Daubert* factors are not particularly helpful in measuring the reliability of a non-scientific expert testifying based on approximately 35 years of practical experience. Instead, here the court must determine whether Stanton "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152. In preparing his expert report, Stanton examined, among other things, Cox's facilities, interviewed employees regarding the actions taken to clean-up after Hurricane Katrina, and reviewed materials regarding the equipment that was damaged by the storm. He then applied his years of experience to determine what had happened and what he, in their place, would have done. He formed these opinions based on some basic tenets of hydrocarbon clean-up he has developed over his years in the Coast Guard. Additionally, he applied his knowledge of the statutes enumerated above to opine on what Cox was required to do by law. The court finds that his methods are reliable for this type of expert given this type of situation.

Cir.1991), *cert. denied,* 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992) ("We caution, however, that although credentials can be significant, they alone are not necessarily determinative. The questions, for example, do not stop if the expert has an M.D. degree. That alone is not enough to qualify him to give an opinion on every conceivable medical question. This is because the inquiry must be into actual qualification—sufficient to assist the trier of fact.").

The issue in this case revolves around whether an ordinarily prudent insurer would have accepted any of the settlement demands on which AGLIC bases its *Stowers* claim. To have the level of expertise sufficient to assist the trier of fact in this case, one would expect an expert to have experience working as an adjuster for a liability insurance company, or in the alternative, experience handling wrongful death cases, or if not wrongful death cases, at least personal injury cases of some type. And certainly, if one had no recent experience in handling personal injury cases, then, at a minimum, you would expect the expert to at least be in a position where he is placing a value on personal injury cases on a regular basis. Walraven, however, strikes out in all of these areas.

```
Q.  Have you ever worked as an insurance adjuster?

A.  As a lawyer I have been retained to perform the
functions of insurance adjusting many times. I have
never been a direct employee of an insurance company.[25]

                    ***

Q.  When's the last time that you have — have you ever
tried a wrongful death case?

A.  I have not.[26]

                    ***
```

---

[25] App., at p. 019.

[26] App., at p. 020.

Q. Okay. And when's the last time that you tried a personal injury case?

A. It's been a while.

Q. Approximately when would be the last time?

A. Oh, probably in the '90's.

Q. And do you recall what kind of case it was, what the injury was, what the type of accident it was.

A. No. [27]

***

Q. Have you ever tried a personal injury case in Houston?

A. No.[28]

***

Q. A large part of your practice is not putting values on personal injury cases, correct?

A. Not currently, no.

Q. And it hasn't been a large part of your practice for quite a few number of years, correct?

A. For a while.

Q. How long is a while?

A. Well, of course, it ebbs and flows over the years. I do have personal injury cases today. It has diminished over the years. I don't – I really can't put a date on the tipping point where it went from being a big part to a small part I couldn't tell you.   It's gradual.

---

[27] *Id.*

[28] App., at p. 020.

```
Q.  And I apologize if I already asked you, but when is
the last time you acted as a defense counsel in a death
case?

A.  That's been a long time.

Q.  Back to the '90's, '80's or '90's?

A.  Probably.

Q.  That would be the last time that you would be
required to put a value on a death case?

A.  Well, as defense counsel. I mean, it could have come
up in one of these other contexts.

Q.  But those would be few and far between?

A.  Yeah.  I mean, I've had injury cases, but not -- I
don't particularly recall a death case right now.29
```

While Walraven is a respected lawyer in the field of insurance coverage, the underlying

case was not a coverage case. Rather, it was a wrongful death case, a type of case with which

Walraven admits he has little experience.  Thus, just as a medical doctor is unable to assist a jury

on all medical issues, Walraven's law license does not make his opinions reliable on all matters

legal. Therefore, Walraven's testimony should be excluded because he does not possess the

minimum level of expertise required to make his relevant opinions, if any, of assistance to the trier

of fact.

WHEREFORE, PREMISES CONSIDERED, ACE American Insurance Company prays

that after due consideration the Court grant the relief requested herein and exclude, in whole or in

part, the report and testimony of Stephen Walraven; and such other and further relief to which

ACE may show itself to be justly entitled.

---

29 App., at p. 049.

Respectfully submitted,

  /s/James H. Moody, III
JAMES H. MOODY, III
Texas Bar No. 14307400
S.D. No. 17723

**QUILLING, SELANDER, LOWNDS,
    WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
hmoody@qslwm.com

**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

This will certify that on March 13, 2019 I conferred with counsel for AGLIC (Blair Dancy) as to whether AGLIC opposed the relief sought in this Motion. At that time, I was advised that this Motion would be opposed.

  /s/James H. Moody, III
James H. Moody, III

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 18, 2018, a true and correct copy of the foregoing document was served upon all counsel of record through the Court's ECF System.

  /s/James H. Moody, III
James H. Moody, III